**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **YOPIMA, LLC,**<br>**Plaintiff,**<br><br>**v.**<br><br>**PARKMOBILE, LLC,**<br>**Defendant** | **Civil Action No. 4:26-cv-05566**<br><br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Yopima, LLC, files this Original Complaint and demand for jury trial seeking relief from infringement of U.S. Patent No. 9,119,038 (the "'038 patent" or "Patent-in-Suit") by Defendant ParkMobile, LLC ("ParkMobile" or "Defendant").

**I. THE PARTIES**

1. Plaintiff is a Delaware limited liability company with its principal place of business located in Atlanta, Georgia.

2. On information and belief, Defendant ParkMobile, LLC is a Delaware limited liability company with a business address at 3200 Cobb Galleria Parkway, Suite 100, Atlanta, Georgia 30339. ParkMobile is registered and licensed to do business in Texas. ParkMobile may be served through its Texas registered agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, at its business address, or anywhere else it may be found.

3. On information and belief, ParkMobile conducts substantial business throughout Texas and in this District through its parking-payment and parking-reservation platform, website, mobile applications, parking-session services, parking-zone workflows, Texas municipal relationships, Texas parking-provider relationships, and Houston-directed parking services. ParkMobile's

Houston presence includes the City of Houston's ParkHouston mobile-payment system, which is powered by ParkMobile; use of the ParkMobile app and website for Houston metered parking; Houston resident-discount account administration; and ParkMobile's off-street parking-reservation marketplace for Houston garages, surface lots, neighborhoods, airports, and venues.

## II. JURISDICTION AND VENUE

4. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on Defendant's unauthorized commercial manufacture, use, importation, offer for sale, and sale of the Accused Instrumentalities in the United States. This is a patent infringement lawsuit over which this Court has subject-matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has general and specific personal jurisdiction over Defendant because Defendant is licensed to do business in Texas, has purposefully directed its acts and commerce to Texas and this District, has transacted and conducted business with residents of Texas and this District, and has committed acts within this District giving rise to this action.

6. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas. ParkMobile's Texas business is not incidental. ParkMobile maintains Texas-directed parking-payment and parking-reservation operations, supports municipal and private parking transactions in Texas, processes parking sessions and reservations tied to Texas parking locations, and offers parking products and services directed to Texas users and Texas destinations.

7. ParkMobile's Houston operations are directed to this District. On information and belief, Houston's official ParkHouston app is powered by ParkMobile, and Houston motorists may use the ParkMobile app or ParkMobile's website to pay for city-metered parking. Public materials

2

concerning Houston's mobile-payment program report approximately 3 million annual meter transactions and a substantial portion of meter transactions through the mobile-payment app. The City of Houston identifies ParkMobile as its parking platform provider. (*See e.g.*, https://www.houstontx.gov/parking/download-app.html.) ParkMobile also operates Houston reservation-marketplace services for participating garages and surface lots, including parking near the Toyota Center, NRG Stadium, the Houston Rodeo, Downtown Houston, Midtown, Memorial, the Medical Center, and the area near George Bush Intercontinental Airport.

8. On information and belief, Defendant has committed acts of infringement within this District and the State of Texas by making, using, selling, offering for sale, providing, operating, supporting, advertising, promoting, and/or otherwise commercializing the Accused Instrumentalities, including ParkMobile's website, mobile applications, location-based parking search, parking-session workflow, reservation workflow, parking-zone workflow, "Start Parking" workflow, navigation functionality, and backend parking-session systems. Defendant, directly and through intermediaries, makes, uses, sells, offers to sell, distributes, advertises, promotes, and/or otherwise commercializes such Accused Instrumentalities in this District and the State of Texas. Defendant regularly conducts and solicits business in, engages in persistent courses of conduct in, and derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

9. The amount in controversy exceeds $75,000 exclusive of interest and costs.

10. Venue is proper in this Court under 28 U.S.C. § 1400(b) based on the information set forth herein, which is repeated and incorporated by reference. ParkMobile is a Delaware limited liability company and is subject to personal jurisdiction in this District. ParkMobile has also committed acts of infringement in this District by operating, offering, and facilitating its accused

3

parking-payment, parking-reservation, location-based mobile-app, parking-session, and parking-zone systems in this District, including through its Houston parking-payment and Houston reservation-marketplace operations. The venue allegations are based on ParkMobile's Texas registration, its Texas-directed and Houston-directed parking operations, its relationship with Houston mobile-payment services, its Houston marketplace activity, and its accused acts in this District.

**III. INFRINGEMENT OF THE '038 PATENT**

11. On August 25, 2015, the United States Patent and Trademark Office duly and legally issued the '038 patent, titled "Systems and Methods for Comparative Geofencing." Exhibit A. Plaintiff owns the '038 patent by assignment.

12. The '038 patent addresses concrete problems arising in mobile geolocation systems, including battery consumption, bandwidth usage, CPU load, and the need to coordinate geolocation monitoring with arrival, departure, and event times. The specification explains that conventional geolocation services may run in the background and perform repeated location queries for days, weeks, or months before a geofence is entered, needlessly consuming battery, bandwidth, and CPU cycles. Ex. A, col. 7:7-20. The patent describes a technical solution using time-based geolocation queries, designated planned arrival and/or departure times, event start/end times, and controlled query frequencies to reduce unnecessary queries or increase query frequency only during a useful time window. Ex. A, col. 7:40-47; col. 7:49-col. 8:15; Figs. 1A-1D.

13. The '038 patent also discloses comparative geofencing systems in which a monitoring service receives notifications from multiple devices and identifies subregions within a broader region. Ex. A, col. 15:3-40; Figs. 4A-4B. The specification explains that an overall region may be defined by a first geofence and that subregions may be defined within that overall region, such as

restaurants, nightclubs, individual buildings, neighborhoods, streets, campuses, cities, or other areas. Ex. A, col. 15:17-26; Fig. 4A. The monitoring service uses information sent with notifications to determine that a device is within a particular subregion and to update statistics for that subregion. Ex. A, col. 15:27-40.

14. The '038 patent is directed to patentable subject matter. The '038 patent claims and describes specific computer-implemented geolocation operations performed by portable computing devices and networked computing devices, including receiving geofence identifications, determining device location, comparing current location to geofence boundaries, transmitting arrival notifications, identifying a current location within one of a plurality of subregions, and doing so in an architecture that uses portable devices, location engines, timers, notification engines, user databases, location analyzers, communication engines, and network interfaces. Ex. A, col. 10:20-65; col. 11:4-56; col. 19:21-col. 20:15; Figs. 2, 3, 5, and 6.

15. The claimed technology improves computer and mobile-device operation by reducing unnecessary background geolocation polling and by allowing location monitoring to be tied to real-world temporal conditions such as planned arrival times, departure times, event start times, and event end times. The patent explains that these systems can reduce battery and CPU usage, reduce bandwidth consumption, and provide enhanced temporal resolution within a useful window of interest. Ex. A, col. 7:7-20; col. 7:40-47; col. 8:48-65; col. 14:51-56. Those are computer-network and mobile-device improvements, not generic business practices performed on an ordinary computer.

16. Claim 13 of the '038 patent recites a method for tracking locations of a plurality of devices within overlapping geofences. The method includes receiving, by a portable computing device, an identification of a first geofence defining a first region; determining a current location

5

of the portable computing device; comparing the current location of the portable computing device to the identified first geofence; and transmitting an arrival notification to a second computing device when the portable device determines that it is within the identified first region, with the arrival notification including an identification of the current location within one of a plurality of subregions of the first region defined by a corresponding plurality of geofences. Ex. A, claim 13, col. 23:33-col. 24:49.

17. Support for Plaintiff's infringement allegations is found in the preliminary infringement chart attached as Exhibit B. Those allegations are preliminary and may be amended or supplemented as discovery proceeds. The Accused Instrumentalities include, by way of example and without limitation, ParkMobile's website, ParkMobile mobile applications, ParkMobile user accounts, ParkMobile parking-payment platform, ParkMobile parking-reservation marketplace, ParkMobile parking-session workflow, ParkMobile parking-zone workflow, "Start Parking" workflow, location-based parking search, mobile-device location services used with ParkMobile, navigation functionality, backend parking-session and reservation systems, and substantially similar systems, applications, services, components, and instrumentalities used to search for, reserve, start, manage, pay for, navigate to, and confirm parking at specified parking locations or parking zones.

18. ParkMobile's public materials show that its accused system is used to find, reserve, start, and pay for parking through a mobile application. Exhibit B alleges that ParkMobile provides a mobile application that uses device location in connection with parking sessions and parking reservations at specified parking locations, and that user devices are associated with specific parking locations and parking zones as part of the parking workflow. Ex. B at 1. Exhibit B also identifies ParkMobile's app-store materials describing offerings such as starting with a tap,

extending on the go, reserving a spot, business parking, street parking, and garage parking. Ex. B at 2.

19. The accused ParkMobile system practices the preamble of claim 13 because it is directed to a method for tracking locations of a plurality of portable computing devices within overlapping geofences. ParkMobile provides a mobile application for smartphones, and Exhibit B identifies the smartphone running the ParkMobile app as the portable computing device. Ex. B at 1. ParkMobile's accused app displays map-based parking locations, uses device location, supports navigation to a selected parking location, and enables a parking session to be started and managed at a specified parking location or parking zone. Ex. B at 1-8. On information and belief, the plurality of devices includes the smartphones of ParkMobile users using the ParkMobile app and related mobile-web functionality in the same city, venue, airport, university, event, business district, street-parking zone, garage, or parking-market region.

20. The accused ParkMobile system practices limitation [13A]. When a ParkMobile user searches for or reserves parking, the ParkMobile app and associated ParkMobile servers provide the user's smartphone with available parking locations, garages, lots, or zones on a map. Ex. B at 3. The claim chart identifies the selected parking location or parking zone as a location-based region used in the parking workflow and alleges that the smartphone receives an identification of a first geofence defining a first region. Ex. B at 3. The chart also alleges that ParkMobile provides available parking locations on a map and that those locations correspond to geofenced regions. Ex. B at 3. That functionality supports the reasonable inference that the portable computing device receives location and boundary information corresponding to a parking zone, parking facility, or surrounding parking-search region.

21. The accused ParkMobile system practices limitation [13B]. Exhibit B alleges that the ParkMobile mobile application uses mobile-device location services to obtain and use the current location of the portable computing device in connection with the parking workflow. Ex. B at 4. The chart further alleges that the smartphone determines its current location so the ParkMobile app can navigate the user to the reserved parking location. Ex. B at 4. A location-based parking workflow, including map display and turn-by-turn directions to a selected garage or parking zone, cannot plausibly function without determining the current location of the phone, either through the phone's location engine, operating-system location services, GPS, network-derived location, or substantially equivalent location functionality made available to and used by the ParkMobile app.

22. The accused ParkMobile system practices limitation [13C]. Exhibit B alleges that ParkMobile uses the device's location in connection with starting or managing a parking session at a specified parking location or parking zone. Ex. B at 5. To use the device's location in connection with that parking location or zone, the application must compare the device's current location to the selected location-based region associated with the parking session. Ex. B at 5. The chart also alleges that during navigation to a reserved garage, the ParkMobile app and portable computing device compare the current location of the smartphone to the identified first geofence to navigate the user to the reserved garage. Ex. B at 5. At the pleading stage, the record supports the reasonable inference that ParkMobile's accused app, servers, and parking-session data identify a destination, zone, facility, or parking geofence and use the phone's current location relative to that geofence in the accused navigation and parking-session workflow.

23. The accused ParkMobile system practices limitation [13D]. Exhibit B alleges that ParkMobile's materials show a user initiating a parking session through the ParkMobile mobile application, including through a "Start Parking" interaction associated with a specified parking

8

location or parking zone. Ex. B at 6-7. The chart alleges that the parking-session communication is tied to the device being at the selected parking location or parking zone identified in the parking workflow, and that ParkMobile transmits, by or through the portable computing device, a parking-session notification or communication to a second computing device corresponding to the ParkMobile system. Ex. B at 6-7. The "Start Parking" communication, transmitted to ParkMobile's backend parking-session system, is an arrival notification or communication showing that the smartphone has arrived at, or is being used for, the selected parking location or parking zone. Ex. B at 6-7.

24. The accused ParkMobile system practices limitation [13E]. Exhibit B alleges that the arrival notification includes an identification of the current location of the portable computing device within one of a plurality of subregions of the first region defined by a corresponding plurality of geofences. Ex. B at 8. The chart identifies the zone number or selected parking location as the current-location information included in the parking-session communication, and alleges that the first region includes the available parking locations shown on the map, with the selected garage, lot, or zone serving as one subregion within that broader region. Ex. B at 8. The ParkMobile "Start Parking" workflow and zone-number workflow identify the location at which the parking session is being started, allowing ParkMobile's backend system to associate the user's device, vehicle, session, time, and payment with the correct parking zone or facility rather than a different subregion. Ex. B at 6-8.

25. ParkMobile has a significant commercial and operational relationship with Houston parking. On information and belief, ParkMobile powers the City of Houston's ParkHouston app, Houston motorists may use ParkMobile's app or website to pay for city-metered parking, and the City identifies the ParkHouston and ParkMobile apps as authorized apps for Houston parking-

9

meter payments. ParkMobile also administers Houston resident-discount account functionality and operates a Houston reservation marketplace for participating garages and surface lots. These materials corroborate the claim chart's allegations that the accused system operates through location-specific parking sessions, zone-based parking transactions, map-based parking locations, mobile-device location, and app workflows tied to specific parking places in a city marketplace.

26. ParkMobile directly infringes at least claim 13 of the '038 patent by making, using, offering, providing, operating, controlling, testing, supporting, and/or benefiting from the Accused Instrumentalities. ParkMobile operates the accused platform and backend parking-session systems; provides the accused mobile application and website; supplies the parking-zone and "Start Parking" workflow; specifies the session, zone, reservation, and payment format; enables map-based location identification and navigation to parking locations; and receives the commercial benefit of completed parking-payment and parking-reservation transactions.

27. To the extent ParkMobile contends that a user, smartphone, smartphone operating system, municipality, parking operator, parking meter, garage system, payment processor, mapping provider, or other third-party component performs a step that ParkMobile itself does not physically perform, the allegations nevertheless support direct infringement by ParkMobile. ParkMobile conditions participation in the accused parking-payment and parking-reservation platform on use of the ParkMobile app, ParkMobile website, ParkMobile account, ParkMobile parking-session workflow, ParkMobile parking-zone identifiers, ParkMobile "Start Parking" workflow, ParkMobile-specified payment/session data, and ParkMobile-prescribed parking-session procedures. ParkMobile establishes the manner and timing of the relevant acts by instructing users to search, select a location or zone, navigate, start a parking session, pay, extend, and manage the parking session; by coordinating municipal and private parking-provider

10

participation in ParkMobile sessions; and by operating the backend transaction that makes the parking session valid for the selected zone or location. ParkMobile receives the benefit of the performed acts because they complete ParkMobile's paid parking transaction and enable ParkMobile to provide, support, and monetize its parking platform. Ex. B at 1-8.

28. Plaintiff's infringement theory does not depend on treating unrelated products as a single accused product without explanation. The accused system is the integrated ParkMobile parking-payment and parking-reservation platform, including the ParkMobile app, ParkMobile website, ParkMobile backend parking-session services, ParkMobile parking-zone database, "Start Parking" workflow, reservation and parking-session communications, mobile-device location services used by ParkMobile, and associated municipal or parking-provider integrations used together to complete a parking session or reservation at a specified location. Exhibit B identifies how the accused app, map, location services, navigation, zone/session, "Start Parking," and backend communication workflows operate together. Ex. B at 1-8.

29. Plaintiff's infringement allegations also do not depend on an improper abstraction of the claims. The alleged infringement is tied to concrete claim limitations and corresponding accused functionality: a smartphone with the ParkMobile app, a parking-search or parking-zone region, available parking locations shown on a map, the phone's current location, comparison of the current location to a selected location or zone, the "Start Parking" or parking-session communication transmitted to ParkMobile's backend system, and identification of the selected parking zone, garage, lot, or location as a subregion within a broader parking region. Ex. B at 1-8.

30. Defendant has had knowledge of the '038 patent and Plaintiff's infringement allegations at least as of service of the original complaint and accompanying Exhibit B. Plaintiff

11

reserves the right to seek leave to amend if discovery shows earlier knowledge of the '038 patent, the accused technology, or Defendant's infringement.

31. Defendant has induced infringement of at least claim 13 of the '038 patent by actively encouraging, instructing, directing, and causing users, municipalities, and parking-provider participants to use the Accused Instrumentalities in the infringing manner. ParkMobile instructs users to download and use the ParkMobile app, search for parking, identify a parking location or zone, use device-location functionality, navigate to a selected parking location, select the vehicle and payment method, press "Start Parking," manage the parking session, and extend the parking session. Ex. B at 1-8. Those instructions and workflows encourage the acts that satisfy the limitations of claim 13.

32. Defendant has contributorily infringed at least claim 13 of the '038 patent by offering and providing material components of the claimed method, including the ParkMobile app, ParkMobile zone/session workflow, ParkMobile "Start Parking" functionality, ParkMobile reservation and parking-session data, ParkMobile backend services, and municipal or parking-provider session-validation workflow. These components are especially made or adapted for use in ParkMobile's accused parking-payment, parking-session, reservation, and location-based workflows and are not staple articles suitable for substantial noninfringing use in the accused configuration. Plaintiff pleads direct infringement by ParkMobile and, in the alternative, direct infringement by users, municipalities, and parking-provider participants who perform the accused steps using ParkMobile's prescribed app, zone, session, payment, and parking-workflow procedures.

33. Defendant's acts of infringement have caused and will continue to cause Plaintiff damage. Plaintiff is entitled to recover damages adequate to compensate for Defendant's

12

infringement, including no less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs.

## IV. CONDITIONS PRECEDENT

34. Plaintiff has never sold a product. Based on information and belief, Plaintiff's predecessor-in-interest has never sold a product. Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

35. Plaintiff and its predecessors-in-interest have granted settlement licenses to several defendant entities, but none of the settlement licenses were to produce a patented article, for or under the Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading, but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with §287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that they were infringing any of Plaintiff's patents, including the patent-in-suit, and thus were not entering into the settlement license to produce a patented article for Plaintiff or under its patents. Further, to the extent necessary, Plaintiff will limit its claims of infringement to method claims and thereby remove any requirement for marking.

36. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to either show that the alleged unmarked product does not practice the patent-in-suit, and that Plaintiff has substantially complied with the marking statute. Defendant has failed to identify any alleged patented article for which §287(a) would apply. Further, Defendant has failed to allege any defendant entity produced a patented article.

13

37. The policy of §287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus do not require marking. All settlement licenses were to end litigation and thus the policies of §287 are not violated. Such a result is further warranted by 35 U.S.C. §286 which allows for the recovery of damages for six years prior to the filing of the complaint.

38. For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and defendant entity for patent infringement; (3) defendant entity did not believe it produced any product that could be considered a patentable article under 35 U.S.C. §287; and, (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. §287 for each prior settlement license.

39. Each settlement license that was entered into between the defendant entity and Plaintiff was negotiated in the face of continued litigation and while Plaintiff believes there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of §287 are not violated.

40. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on Yopima to make an effort to require a prior settling defendant to mark the products Yopima had accused of infringing its patents.

14

**V. JURY DEMAND**

41. Plaintiff hereby requests a trial by jury on issues so triable by right.

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a. enter judgment that Defendant has infringed the claims of the patent-in-suit;

b. award Plaintiff damages in an amount sufficient to compensate it for Defendant's infringement, in an amount no less than a reasonable royalty or lost profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c. award Plaintiff an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement; and

d. declare this case to be "exceptional" under 35 U.S.C. § 285 and award Plaintiff its attorneys' fees, expenses, and costs incurred in this action;

e. provided discovery reveals that Defendant knew (1) knew of the patent-in-suit prior to the filing date of the lawsuit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent, declare Defendants' infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

f. a decree addressing future infringement that either (i) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the patent-in-suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendants will be an

15

adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and,

g. award Plaintiff such other and further relief as this Court deems just and proper.

DATED: July 14, 2026                    Respectfully submitted,

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
RAMEY LLP
wramey@rameyfirm.com
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)
(832) 900-4941 (fax)

***Attorneys for Yopima, LLC***

16